Robert Massey, on behalf of the Appellants Lexington Insurance Company and AIG Claims. What is before the court today is, I submit, a field that involves clear law that is directly on point and applicable and facts that are not particularly complex, easy to analyze, but unfortunately, the district court misapplied the law and concluded the facts contrary to what should have been done. This case is fairly simple, as I said. And the clear law is what? Jenkins v. Nationwide Insurance Company. Jenkins 2013 case very clearly says when attorney's fees are recoverable and when they are not recoverable in a case like this. This case was combined two basic claims. One was a claim under the policy or benefits under the policy. One was what we would call bad faith. A Hayseeds claim, a claim under Hayseeds v. State Farm, an insured substantially prevails against their own insurer, they are entitled as a matter of law to attorney's fees. He is incurred to vindicate the claim, that's the first syllabus of Hayseeds v. State Farm. Annoyance, aggravation, and inconvenience, net economic loss. The second component of the bad faith claim here was what we would call the unfair trade practice of that claim, the Jenkins claim. Jenkins is a case that says... You mentioned Jenkins twice, is it in your mind? Jenkins v.... Jenkins is the one... facing penny. Okay, thank you. We in the bar would refer to the claim for alleged violation of the Unfair Trade Practices Act as a Jenkins claim or a UTPA claim. Jenkins is not particularly relevant to this case, except for the fact that it recognizes an implied cause of action. I'm sorry, Your Honor. Okay, I found it in Appellee's brief, it's not in your brief. Oh, okay. But the key issue, the key case is the LeMaster v. Nationwide. Yeah, okay, that's what I thought was the key case, and you threw me off with the Jenkins there and rightfully so, it wasn't in your brief, so I don't know what's happening here. So, LeMaster very clearly says you can recover attorney's fees for prosecution of a claim under an insurance policy. You cannot recover attorney's fees for prosecution of a Hayseeds claim or prosecution of a Jenkins UTPA claim. Can I ask you to take a step back, because this confused the heck out of me. Am I right if I just say the following, there is no such thing as a Hayseeds claim. There is a breach of contract claim, and there is a bad faith UTP claim, but I cannot file a lawsuit in court for something called, I would like to assert a cause of action under Hayseeds. Hayseeds is a measure of damages in attorney's fees in a breach of contract claim, right? It's about the remedies I can get in a breach of contract claim. It grants certain, I see your point, it grants certain remedies if liability is established, and the way liability is established is if the insured substantially prevails. Sure, but that's just like, I don't know if you litigated section 1983 cases in federal court, it's like saying there's no such thing as a claim under 42 USC 1988. If you prevail in a case under 42 United States 1983, then you can get attorney's fees under 1988, but there's no such thing as a 1988 claim, right? I see your point, your honor, and the question of whether a plaintiff and insured has substantially prevailed is for the court to decide on a jury. So, the judge would say, yes, you've substantially prevailed. So I guess the reason, my sense is that what the Supreme Court of West Virginia has said is there are two types of claims. There's a breach of contract claim, and there's a claim, I can get attorney's fees. If I win my bad faith claim, I don't get attorney's fees. Is that at a high level of generality and accurate statement of West Virginia law? That is absolutely correct, and that is the problem with the case that we have here before us. The district judge awarded attorney's fees for prosecution of the bad faith claim, and how do we know that? Well, the case progressed, and in April 29, 2020, Lexington Insurance set a check for the benefits owed under the policy. The amount they calculated based on discovery, this is what we owe you under the policy, and they sent the check to the plaintiff. A key, what the judge didn't, I think, fully accept is that that was not a settlement offer. An insurance company in West Virginia is required by law to pay a claim once liability is reasonably clear. There's a statute that requires it. The liability was reasonably clear, and in fact, they sent the check to plaintiff's counsel on the following day, which was received on May 2, 2020. The key is there was no quid pro quo for the check. A settlement is a contract. It is an agreement. If I give you this money, will you dismiss your claim against me? But did it clearly say the following? This is just for the contractual damages. This is not for your bad faith claim. We understand that's going to continue to get litigated. Did, when you said, my recollection of the record is that you literally just sent them a check and didn't say, like, this is what it's for, this is blah, blah, blah, right? Did it say very clearly, if you take this check, because, I mean, let's, to be a bit cynical, I suspect, all right, let's suspect that the best, I suspect that your friend on the other side could say the following. I would never have told anyone to cash that check, because you're going to turn around and hit me with the argument that by taking that check, I have settled this entire lawsuit, and I'm not going to take the risk of that. To answer your question, does it clearly say that?  It does not clearly say in those cards. What does it say? There is a letter that is sent the day before on April 29th in the record, and it says, we're going to send you a check in this amount. This is the amount we're going to send you. Doesn't that letter contain the words, to resolve all claims? Your Honor, I think it does. That's pretty bad, right? Because all claims includes their bad faith claim, and if I was their lawyer, I would definitely tell them not to cash that check. No, Your Honor, actually, the letter goes on to discuss the pending bad faith claim and what's going to be done, etc. There's no indication in that letter that they wanted a resolution of the bad faith claim. I don't accept the word all. I mean, the word all kind of implies that you wanted a resolution of the bad faith claim, too. Or at least, if I was their lawyer, I would be worried that you might later argue that all covers the bad faith claim. Well, Your Honor, I'm not sure how you... And claims plural. It says claims. It doesn't say claim. The letter that was sent is not as clear as I would like it to be. The letter came from the insurance company, but it explains exactly how they got the papers. It was, here's the amount that you lost for the car, here's the amount of the bank fees, as I recall, here's the amount that we're going to include for interest, which is 4.75, and this is the mathematical calculation of what you're owed under the policy. Wait a second, though. But does that, therefore, include all of the damages associated with the breach of contract claim? No, Your Honor. So, if it didn't, then how could that resolve anything? Because they're required to pay the benefits due under the policy when liability is reasonably clear. And the reason I said, no, it doesn't resolve all of the contract is because under hayseeds, you get annoyance, aggravation, and inconvenience, net economic loss, which are triggered by the policy. So, if you're telling me that's your position, then why wouldn't an attorney continue to work for his client and bill for all those other items that they are due under hayseeds? Well, if the ruling is that you can just reject a payment for the benefits under the policy and keep the attorney fee clock rolling, then that's what they're going to do. And so, LeMaster becomes moot. Yeah, but the problem I'm having is you've just said I'm tendering a check, and we assume that it was, in fact, to pay what was due. But, in fact, it wasn't for everything that was due. Then how would that stop the attorney's fee clock from running when there's still work to do? In other words, there's still other items of damages to ascertain, to negotiate, and or resolve. Are they supposed to abandon those other damages under hayseeds? Absolutely not. They can continue to pursue them. So, did, in fact, they continue to pursue those same damages until you ultimately got to a point where you settled the entire case? No. They did pursue the damages, but the court granted summary judgment on the policy claim on May 26, 2020. And at that point, and this is why it's important, at that point, May 26, 2020, all of the work from there on after is not done to seek benefits under the policy. Wait, so I'm very confused by that argument because how did they know you? I mean, I understand the district court granted summary judgment in their favor. How did they know you weren't going to appeal that ruling? Well, they... Just because a district court grants summary judgment does not mean that the plaintiff has won and has won for all time and has to not worry about anything and it's smooth sailing year out. They could have worried that you'd appeal. They know two ways. One, we've already sent a check for the benefits... Okay, but that just brings us back to the check argument. Okay, that brings back the check. But two, if you look at the fee petition that was filed and you look at the affidavits that were attached to the fee petition, that all of the affidavits by the lawyers that said that counsel's work was necessary and appropriate, look at the specific language. Those affidavits say, after May 26, 2020, I have reviewed the fee petition. I have reviewed the invoices. I find that all of the work after that day was for prosecution of the Hayseeds claim and the UTPA claim and was reasonable. I agree with what Pelley submitted to the court. All of the work done after that day, May 26, 2020, was, in his own words, done to pursue the Hayseeds claim and the UTPA claim, and LeMaster clearly holds you cannot do that. You get attorney's fees for up to... In whose own words? I'm sorry? You said it was in his own words. The affidavits were all drafted by Pelley's counsel. The affidavits are all the same, and we quoted them in the... Right, okay. And all of the affidavits say, each lawyer, and I forget how many there were, eight or ten, each lawyer signed an affidavit saying, I reviewed the bills of counsel. After May 26, 2020, all of the work that was done was for prosecution of Hayseeds and UTPA. LeMaster says you don't get attorney's fees for those claims. We started out with you trying to describe what Hayseeds is, and Judge Heitzen says, well, wait a minute, but that's just how West Virginia categorizes damages. Under Hayseeds, these are the things that you get. Again, I go back to my question. In your tender, in your offer, and at summary judgment, did the judge rule that here are all of the Hayseeds damages, and you win, at partial summary judgment stage? No, Your Honor, the judge actually denied the motion for summary judgment, as I recall, saying that there were issues, in fact, about whether it's been paid and you can recover, et cetera. So at partial summary judgment stage, the trial judge found that there was an unlawful denial of coverage. That's right. So then what was left? Aside from the unfair trade practices claim, was there anything else left on the first cause of action after summary judgment was entered? No, Your Honor. It would have been the policy. You have breached the policy. You owed the benefits under the policy. You should pay the benefits under the policy. That's the order, the net effect of the order. Hayseeds would then say, kick in and say, you're now entitled to annoyance, aggravation, and inconvenience. And when was that determination made on the amount? On the amount of the annoyance, aggravation. There was never. So how is, in this case, Moses supposed to get that amount? Were they just simply to write you a letter saying, hey, I think the amount is X, write me a check? No, Your Honor. That is an issue for the jury to decide. And they actually had that claim and pursued that claim from May 26, 2020, through the date of the final settlement. So they were entitled to attorney's fees prosecuting or pursuing the annoyance part of defense? So you say LeMaster stands for the proposition that you do not get attorney's fees for prosecuting all of your Hayseeds damages? That's correct. Where do you see that in LeMaster? Where does it say if there's still outstanding issues under your insurance claim, you don't get attorney's fees anymore because liability has been determined? In two parts. One, the syllabus point one of the Hayseeds case, which lists the damages under Hayseeds, says the very first element of damages is reasonable attorney's fees incurred to vindicate the claim. It's the claim under the policy, the benefits under the policy. And then second, in the LeMaster case, I think it's at page 232 of the case, it says you cannot recover for Hayseeds damages. So there are two places which, and again I'll read the syllabus point, because it is syllabus point two of Jenkins, is just a copy of syllabus point one of Hayseeds. Whenever a policyholder substantially prevails in a property damage suit against its insurer, the insurer is liable for, one, the insurer's reasonable attorney's fees in vindicating its claim. On May 26, 2020, the claim under the policy was vindicated. The court held... And that's what you say the cutoff date should be for attorney's fees. That's what I say is... Everything after that is Hayseeds. That's right. And the court also says, 232 West Virginia Act 223, there is simply no authority in our jurisprudence that supports the LeMaster's contention that the Hayseeds damages continue throughout the course of the bad faith litigation. Therefore, it was not error for the circuit court to deny additional attorney's fees pursuant to Hayseeds. So the law in West Virginia is very clear. You get attorney's fees for the contract claim, for the policy. You do not get attorney's fees for Hayseeds and bad faith. Okay, thank you, Mr. Massey. You have some time reserved in rebuttal. Mr. Mundy? Thank you. Good morning, and may it please the court. My name is Bill Mundy, and it is my privilege to represent the Appalachian Moses Enterprises. The controlling issue in this appeal is whether the district court was clearly erroneous in finding that the unsolicited check sent by the appellants was an offer to settle. All of the appellants' arguments are conditioned or predicated upon this court finding that the district court erred in making that finding a fact. I'm glad you guys pointed out the check because the underlying facts that supported the district court's rulings regarding this issue, part of those facts related to the check and how that check came to be and the course of conduct that surrounded that check. In late April 2020, I was on a telephone call with prior counsel for the appellant, and we were discussing settlement. At that time, I made a settlement demand. The settlement demand was rejected. The appellant said, we believe the case has a value of approximately $40,000. I kind of laughed. The case ends up getting settled for $600,000, but I kind of laughed. I said, we're not going to accept $40,000, so that's going to be rejected. Subsequently, I get in the mail a check for $40,000. It didn't come from counsel. It came directly from the insurance company. If you look at the check, and I'll tell you what is even more interesting than just looking at the check. The same day that check was issued, on the 29th of April 2020, the appellant filed a memorandum of law in opposition to the plaintiff's motion for partial summary judgment. We had filed a motion, or the appellant, excuse me, or the appellees, excuse me, again. We had filed a motion for partial summary judgment on one issue, and one issue alone, and that was whether the insurance company legally owed the claim under that policy of insurance. The memorandum in opposition filed by the appellant, they argued first that they were not legally liable under the policy, that they did not owe the claim, and they asked the court to deny the motion for summary judgment. There was nothing in that memorandum that said, oh, hang on, we've issued a check to pay this claim, so this issue's moved. But so when the summary judgment was granted, that resolved the claim, didn't it? No, no, it didn't resolve, it resolved the claim. I thought you just said that was the only issue. Okay, well, do you agree with opposing counsel that you can't collect attorney's fees for hay seeds? No. You do not agree with that? No, there's a West Virginia case that has approved it. Which one? We've done it for decades, Your Honor. Which one? Which West Virginia case? Thompson v. State Farm. Thompson. And what does it say? Give me one second, and I'll give you the site. It's in our brief, Your Honor. Thompson v. State Farm, 181. Thompson v. Okay. What did I say? Thompson v. Thomas. Excuse me. Okay. Thomas v. State Farm. The West Virginia Supreme Court approved the awarding of attorney's fees for successful pursuit of hay seeds damages in that case. There's no case law in West Virginia. Okay, let's try another. You do agree that you cannot get attorney's fees for a Jenkins claim, right? I do. Okay. So let me spell out what I'm troubled about about the district court's opinion, and maybe you tell me why I'm wrong. As far as I can tell, the district court said, well, I don't know, they brought both a breach of contract and a hay seeds, bracketing whether that's actually a separate thing, and a Jenkins claim, and I'm not going to make any effort whatsoever to disaggregate the fees that were spent on the Jenkins claim. Well, I'm just not, because I don't have to. The thing that the district court said to me that seems most clearly wrong is the belief that the district court does not have to make any effort to separate out time spent only on the Jenkins claim. Why is that not wrong? Well, I think, first of all, that I'm not sure that was exactly his analysis, but let's go with it. Well, do you agree that the district court did not, in fact, make any effort to separate out time spent only on the Jenkins claim? I agree. Okay. Why wasn't that wrong? Well, I think the reason that is is because numerous parts of the elements of damage under a Jenkins claim are the exact same damages that are recoverable under a hay seeds claim, and you are entitled to attorney, you know, annoyance, aggravation, inconvenience, net economic loss. Those things are recoverable under both claims. No, I guess I – I don't think the judge would have been able to do that. Well, maybe that's true. So let me give you an analogy. This, to me, just seems a lot like partial success under a 1983 claim in federal court, right? Are you familiar with that area of law? A long time ago. Okay, so let me try to summarize. Broadly speaking, we have a fee-shifting regime that says a prevailing plaintiff can get attorney's fees, and then we have a regime that says, well, sometimes plaintiffs succeed in part and fail in part, and the statute only allows fees for a prevailing plaintiff. So in principle, what we tell district court judges is you have to try to separate out the time spent on the claims that succeed and the time spent on the claims that can fail because you're entitled to compensation for the time spent on the claims that succeed but not on the times that fail. And then we also say something that sounds a lot like what you just said. Look, sometimes you can't separate out time like that because an hour spent on X is also spent on Y, and you can't really disaggregate them. And what we say in those situations is when it's not possible because the time is spent both on the prevailing and the non-prevailing, it's okay to award fees for that time. But what we say is you have to at least make an effort, and you have to explain why it is you can't do that. You can't just declare at the outset that because the plaintiff prevailed in part, I'm going to give them all of their fees. And I guess, just to bring this question to a close, that is what it seems to me the district court judge did here and just said, you brought one claim that you can get fees on, you brought one claim that you can't get fees on, and I don't know, I'm just going to award you fees on the whole thing. And I don't understand how that's consistent with the notion that you can't award fees on claims. Maybe the district court could find in this particular situation it's not possible to separate them out because of the particular natures of this particular litigation, but I didn't see the district court saying that. I just see the district court saying because they were litigated together, you get all of your fees, and I don't see how I can square that with what the West Virginia Supreme Court has said. Well, I think his only case is Lemaster v. Right, which seems really good for him and really bad for you. Well, I disagree, respectfully, but I don't believe Lemaster's is positive here. Lemaster's dealt with a bifurcated case, and if you look at the facts of this. But there's nothing in the Lemaster's court's analysis that suggests, I mean, that is a factually true statement that Lemaster's was a bifurcated case. I don't see anything in the court's analysis that suggests that matters even one bit. Let me tell you why it does. Because Lemaster's filed a Hayseed's claim, and they settled their Hayseed's claim. They got paid for their Hayseed's claim. They got attorney's fees awarded for their Hayseed's claim, and then they turn around to the court, and they say, we'd like to amend our complaint, Judge. We want to assert a Jenkins claim now. The court allows them to amend. They pursue their Jenkins claim. They try their Jenkins claim. They prevail in their Jenkins claim. Now they come back to the court, and they say, Judge, we'd like attorney's fees on all this other stuff we've done to pursue this Jenkins claim. And the court says, and I think correctly, says, well, you know, they denied those attorney's fees, saying there's nothing under Jenkins that allows those. But unlike Lemaster's. The dissenting opinion in Lemaster's describes the majority opinion as concluding that attorney's fees are awardable only for fees incurred in the underlying action against a tortfeasor. Isn't that what we have here? Well, that's what we did. Yeah. That's Justice Davis. Uh-huh. And you're not. What do you mean? That's what we did. You have to school me here. I don't know if, if I'm, I'm familiar with it, but I don't know if I'm allowed to argue it, but, uh, since it is a descending opinion, but, but yeah, that's why it's not controlling. But why, I guess I'll say, why is that an incorrect characterization of what the majority says? Why? Why is justice? I mean, I agree. I said that the majority opinion concluded attorney's fees are awardable only for fees incurred in the underlying action against a tortfeasor. Right. So. And that's, that's the breach of contract case. That's the hate. Right. And that she says, and they wanted additional damage for the Jenkins claim. And judge, but that's what you want. Oh, I don't. You want something beyond may 26, 2020, right? May 26 was a summary judge, an order for a partial summary judgment on liability, a finding by the court that AIG Lexington owed the claim. It didn't say here are the damages under that policy that you are entitled to. And it didn't set out a dollar amount for those damages. Are you in? Okay. So you, it's your position that you are. Yeah, I will go ahead. Is it your position that you are entitled to attorney's fees for bad faith litigation in West Virginia? See, I don't like the word bad faith litigation. Okay. What do you want to call it? All right. What do you want to call it? Well, I think what it should be called is that the type of case that you're pursuing, whether what type of case were you pursuing after may 2020. Okay. And, and you're saying that based on what case did you say, Thomas, that you can recover attorney's fees for hayseeds litigation. Yeah. Correct. Okay. Masters is not on point. Well, maybe what about, should we ask the West Virginia Supreme court then? Well, should we certify it? I prefer you didn't. I think you're perfectly capable of this, but you know, unlike in this case, unlike the masters, they had settled their insurance, their insurance claims. We never settled our insurance claims, your honor. And to show you that there is an email from council for, um, the appellant dated August 16th, 2022, the date of the final settlement conference where the case was settled later that day. And that email expressly sets out that there is a dispute. And there has been a dispute for this period of time over the value of the damages under the policy. So our policy claim was never resolved, your honor, never. And judge, the judge was absolutely correct in finding that the, the unsolicited check was nothing more than an offer to settle. Um, the court reviewed that issue on three separate occasions. And on every occasion, the court ruled consistently that that unsolicited check was nothing but an offer to settle the, um, insurance claim that was rejected. Now the court did enter an order saying that the parties did agree at the time of the insurance claim. Is that, so that's when you say the case was resolved? Yes, ma'am. August, 2022, August 16th at the final settlement conference. We spent a day negotiating the case. We've put the settlement on the record and it's memorialized there that day. But prior to that, no. Is it, is it your position that from the time of partial summary judgment until this 2022 date, that it, the court is incapable of segregating or aggregating the time spent on the, the unfair trade practices claim versus the, uh, breach of contract claim? Well, let me expand that with one, one caveat, if I may. Under hayseeds, Mr. Matt, Mr. Massey read you the damages, the West Virginia Supreme Court outlined that a party may recover under hayseeds, you know, the value of the policy. Net economic loss, annoyance, aggravation, inconvenience, reasonable attorney's fees. All this is if you substantially prevail. And then if, if appropriate punitive damages. So to pursue those damages. Yes, we've from, I mean, there, there was never a settlement of the, um, insurance policy claim. There was never a settlement of the annoyance, aggravate aggravation and convenience claim. The net economic loss, the attorney's fees, or any kind of punitive damages. And I understand you. Thomas allows you to pursue those. If in fact, that case says what you've said, I got that part. I'm simply asking. Assume that Thomas says exactly what you just said. And you're able to continue to pursue fees in pursuit of those things. My question goes back to judge heightens point, but, but can't, can you separate out that work? For the part of the work that you've already conceded. You don't get attorney's fees for. I don't know at that. Could you do that? I, I, well, these affidavits appear to do it, to do it. But I would tell you just as a guy who does a lot of this work, those damage issues are basically, if not exactly the same, very similar. But what about paragraph 12 of all of these affidavits that say that they've specifically reviewed the work performed after may 26, 2020. And the work performed after that date was necessary and required to litigate the recoverable damages under hayseeds. Oh, that's hayseeds damages. That's what there, there is a way to, to go back to judge Dawson's point. There is a way to separate what happened. The attorney's fees by date by between may 26th, 2020, when the partial summary judgment occurred in August 16th, 2022, when the full settlement occurred, because you've done it in all these affidavits in paragraph 12. I didn't do anything about that regard on fees, your honor. I think that's a poor choice of words that the hayseeds claim. Wait, I don't know who, who submitted all these affidavits. Well, I assume I did, but the affidavits were, you know, the attorney's fees were never challenged the, the reasonableness of them. And that's what the affidavits were supported. The amount of the hourly rate was never challenged. So that language may be poorly authored. And if so, I'll take responsibility for some, if not all of that, but your honor, I think that to find that the judge was clearly wrong in this case, I don't take, take you back to the question. I don't think we have to find the judges clearly wrong. I think we simply, or at least I'll posit. Maybe all we have to say is under the masters. You can't award damages for a Jenkins unfair trade practices claim, which means that at minimum, the trial court has to attempt to segregate what fees were attributable to what, and what fees were worth attributable to what here, the district court made no effort to segregate them whatsoever. That's legal error. Why, why do we need to say anything more than that? Well, I don't, I think because the damages are the same under those legal theories that, that I guess, let me phrase this a little different. Obviously it seems to me that in order to make out an unfair practices claim, right? There are things I have to prove that are in addition to the thing I have to prove to breach, to make a bridge, a breach of contract claim, right?  What's an example of one of those, you know, this area of what's, one of the things I have to prove to make an unfair practices claim that I don't have to prove to prove breach of contract. You have to prove that one, that the insurance company violated the unfair trade practices act. Number two, you have to prove that that violation occurred with such frequency as to constitute. Okay, great. So that means general business, that means in order to make out a Jenkins claim, I have to prove that it happened to someone other than me,  Yes,  Okay.  you know, it could be you, it could be, but, or it happened to me in a context other than this one context, right? It happened to me another time, right? More than one time. Okay. So why isn't this just as straightforward? If an attorney spends time proving that this happened to other people or happened to my client on an occasion different from this one, that's not a breach of contract claim and it's not recoverable, right? If I could demonstrate, if I filled out a timesheet that said research to other people that this happened to, right? That is clearly not compensable in the context of a breach of contract claim, right? I would agree. So then why doesn't the district court have to try to assess whether some of the time that was spent, Because that wasn't submitted. That type of time was not submitted under this fee petition. Because why? Because you didn't specify the time with that level of detail? No, no, I understand. I've done this. This is my first rodeo. I've done it a few times, you know, and I think there's a lot of law. I mean, it's maybe getting a little bit off track, but I do not request attorney's fees for Jenkins claims. Okay. So to think that I would submit those to this court that I've dealt with before on these issues, I wouldn't do that. I wouldn't have submitted that time. And really, but why wouldn't we have, why wouldn't you go back before the district court and have that discussion so that he could, in fact, make a finding that either it wasn't including these Jenkins claims, or in fact, you can't segregate them. You can't separate them. Why wouldn't we do that? Well, I think the court can, the court looked at that fee petition. And he had the opportunity and he has the knowledge to, and he understands Jenkins pretty well to be able to say Monday, you know, when you, when you interviewed Mr. Smith there about his problems with AIG and the violations they had in that claim with him for purposes of putting him on the stand to have it to be what's what we call a general business practice witness. I'm not going to give you that time. Well, that stuff was just simply not submitted. And that's, I guess, and that's the point. I think that's the point that judge, that we've all been trying to make that it wasn't submitted. The court didn't have the opportunity or didn't take the opportunity to make that determination. And you may well be right that there, that you didn't request any attorney's fees for Jenkins. But why shouldn't the district court make that determination in the first instance? I think, I think he did where I think he did in awarding the fees because he has the opportunity to look at the fee petition. And as I said, he understands what, what the elements of each claim are. And if I would have, what, what if I would have submitted a, you know, I did some work on a 42 USC, 1983 case and I build my time in this one, he would understand that was not related. And he wouldn't give him, he wouldn't allow me to be paid for that. And the same with the Jenkins. Okay. Yes, I do want, I mean, everything is premised. Please understand everything in their arguments are premised upon this court making a finding that the district court was clearly erroneous in finding that that's that check was just an offer to settle because if we, all right, thank you. Thank you. It's a pleasure. Appreciate the argument. Mr. Massey. Now, can you respond to that? Is everything premised on us finding that, that the court was clearly, the district court was clearly wrong and finding that was an offer of settlement. Okay. And why is summary judgment is when the indication of the claim happens. That's when the litigation turns from. So whether that check was a settlement offer or not a settlement offer, it doesn't matter for your argument. You, you still would win in your view. Yes, Your Honor. After that day, May 26, 2020, the litigation turns from, we're now not talking about benefits under the policy that's been decided. Now, the fight is, are you entitled to damage, further damages, annoyance, aggravation, and inconvenience for ACs? Are you entitled to damage under, under the UTPA claim? And if you look at the fee petition that was submitted, you look at the bills, you look at the affidavits, it is, it is crystal clear after that date, the policy is no longer relevant. We go forward. And those fees are not recoverable. That's why. And in, in the briefs, I actually calculated the amount should the court look at it that day. This is the amount that was submitted before that. Um, on the. But your, your position is all work done after that, that summary judgment order is out. So you're not looking to determine whether or not it fits into one bucket or the other. You're not looking at Jenkins versus Hayseed. You're saying if there was work done, you don't get attorney's fees for it. That's the record. So what's, what's your response to the discussion we just had though, with regard to this notion of if in fact, those fees are recoverable, how you determine whether or not they were Hayseed versus Jenkins. It's irrelevant. Under little masters, you don't get attorney's fees for recovery or efforts done to pursue Hayseed claims or Jenkins claims. So your position is all or none. I know you want to discuss whether or not there is a hybrid, which is what we've been doing. You're saying, I don't want to talk about that. I'm just simply saying it's none. And there is no more discussion. I'm saying none after may 26th. And we didn't challenge the rate. We didn't challenge a single entry prior to that day. Whatever was done prior to the resolution, the vindication of the claim under the policy, those fees are entitled. They are entitled to those fees. And all of those affidavits clearly say in paragraph 12, that after may 26th, 2020,  all the work was done to pursue Hayseed's litigation. They do, your honor. And that's what happened in the case. Once you win the summary judgment on the policy, saying that the insurance company has breached the policy, the work turns to the second part of the case, as it should. Prior to that day, frankly, work would have been done on both. Work would have been done on the policy claim, and work would have been done on the unfair trade practices of Jenkins claim. But we didn't ask the court to separate those because if he did work for both, he's probably entitled. So we tried to draw a bright line. Before this day, all fees that you claim you get. After that day, none of the fees you claim you get. And the citation to the Thomas versus State Farm case, again, your honor pointed out, it is 20 years before the controlling precedent of LeMaster, but also in that case, the jury awarded a recovery for the insured loss, a claim under the policy. And in fact, if the claims were tried together, I understand. But here, the claim was vindicated, to use the language from Hayseeds and State Farm. So your argument would be different today if tactically they decided not to file a motion for partial summary judgment. They just let the claim just continue to ride out. And then at some point in time, there's this magical settlement. And given what you've just said, we then wouldn't have a discussion about whether or not it was for one claim or the other. Well, in that situation, you would be different. You would actually have to go through the bills and try to figure out, is this solely for Hayseeds or UTPA? In that case, it's not. Is it hybrid? If it's a hybrid, the judge probably has the discretion to award it. But here's why that's a problem. In West Virginia, you can join the contract claim and the UTPA claim in the same lawsuit, Light versus All States, our call is the case that says you can do that. So you can do the discovery, you can do the litigation, you can try them together in a first-party case. And so if you let a litigant get a check and reject it, then the attorney fee clock is going to continue to run, which is why there has to be a bright line, which is why I'm here saying, in this case, there is a bright line and there's clear law that these fees are not recoverable. And we would ask that it be reversed, remanded back to the district judge. I think the record is very clear. After May 26, 2020, nothing recovered, but that's for the judge. All right. Thank you. We'll come down and greet counsel and then go to our fourth and last case.
judges: Stephanie D. Thacker, Toby J. Heytens, Joseph Dawson III